As you'll see, he is joining us by a video hookup. The court will be taking approximately a 10-minute recess after the second argument today. Our first case today is Amy Harnishfeger against the United States, Appeal 18-1865. Mr. Rose. Thank you, and may I please the court. There is no doubt that the book at the center of this litigation is crude, makes for an uncomfortable read, and addresses a difficult subject matter. After all, it is by sharing not only actual conversations from her time as a phone sex operator, but also her reaction to those conversations that Ms. Harnishfeger sought to provide information for the benefit of the public, and in her words, to rip the rose-colored glasses off the phone sex industry. And there is no reason to believe that her authorship of the book, before her time as a government employee and done using a pseudonym, would in any manner jeopardize the National Guard's ability to performance function. The evidence is undisputed that it did not do so in the three months that she continued to work there. The district court, therefore. Had written a public article or a post identifying Ms. Harnishfeger as the author of the book. In that case, would the Indiana National Guard have had a legitimate basis for concern that her speech might interfere with the mission of the Family Programs Office? No, Your Honor, I don't think so. And to reach that conclusion, I don't think this court has to look any further than the Rankin case, where an identified ministerial employee made a caustic, inappropriate, and offensive comment concerning, in fact, the assassination of the president at the time. And even then, the Supreme Court said that any governmental interest, whether viewed in terms of public perception or viewed in more concrete terms, is quote, unquote, quote, minimal. And I don't think the government can overcome that decision. The only- The Rankin speech was on the job, wasn't it? Was while at the job to a co-worker. And certainly, the fact that Ms. Harnishfeger used a pseudonym is, I think, undeniably a point in our favor. The fact that the speech occurred before she became a government employee and was in absolutely no manner linked to her government employment are also very, very compelling points in our favor under Pickering. And I think in order to overcome Rankin, the government needs to suggest, as I think it does implicitly in its briefing, that a different result would have reached if, in addition to the duties that the clerk in Rankin actually performed, that clerk also occasionally made phone calls of a ministerial nature, asking their organizations or whatever her job might entail for something as rudimentary as their contact information, which is the only thing that conceivably distinguishes Ms. Harnishfeger's role in this case from the role of the plaintiff in Rankin. And I don't think there is anything in that case that can conceivably be read to say that a different result would issue if the clerk's job also entailed that. And I think that after her removal from the guard, Ms. Harnishfeger was asked to remove the post about the book from her Facebook page. And she did so. So would you agree that the guard itself legitimately could have insisted that she remove the post as a condition of her remaining there? I don't think. I think we would still have First Amendment issues in that case, Your Honor. The fact of the matter is that the only thing the post did was identify her as the author of this book. And as I say, I don't think the pseudonym is necessary for our case here. I think that certainly the fact that it was otherwise anonymous, as I say, makes it very difficult for the government to conclude that it had an interest. But the only thing the post did was identify her. And if instead of that post or that book, Ms. Harnishfeger, as we noted in our briefing, had during the course of a social gathering, entirely on her personal time, simply mentioned, I work for the National Guard. Oh, and by the way, half an hour later, also mentions that she wrote this book. I think that then we would have the exact same case here. And I don't think that the government has any business disciplining an employee for that type of interaction. And I hasten to add, and we underscored this in our briefing, I don't think the government addresses it at all, I don't think the government itself legitimately believes that it had a role here. As we noted, following her removal from the National Guard, Ms. Harnishfeger was offered an opportunity to seek another position with another service organization, including several that serve children. And I think it is nonsensical to suggest that the authorship of this book before her time as a public employee somehow rendered her categorically unfit to serve the National Guard, while at the same time suggesting that she might get a position with Indianapolis Public Schools. But at that point, hadn't the link been deactivated? She had already taken it down in compliance with the request. And I think the fact that the government waited until after her removal to make that request, I think there's something to be said for that. Because if the government thought that the Facebook page really was the issue that required her discipline, there's absolutely no reason it would not have made that request to allow her to stay at the National Guard. As I say, there are numerous steps that Ms. Harnishfeger took to maintain the anonymity of the post. Certainly, we acknowledge that at one point, her direct supervisor gained access to this information. I gather, though, the evidence showed the supervisor had to dig pretty deeply to find it. That's absolutely true. As we noted in our briefing, in order to find a months-old Facebook post, you don't just have to become Facebook friends with someone whose information is listed as private. You have to actually go through their page. I think the record was you had to scroll down through dozens, possibly hundreds, of different posts in order to find this information. And as time continued to pass, that only became a more and more difficult task for anyone else who might conceivably become friends with Ms. Harnishfeger. So I think the government suggests that the real issue here is that it is possible that service organizations might have learned of this and might have refused to do business with the National Guard as a result. I think as a practical matter, it is very difficult to imagine a service organization refusing to assist persons because of what a ministerial employee did on their own time before they were a government employee. No one cares what the person performing data entry did. But that issue aside, even if a service organization or a member of a service organization requested to become Ms. Harnishfeger's friend through Facebook months after the fact, even if Ms. Harnishfeger accepted that request from a complete stranger, which there's no basis in the record for reaching that conclusion, that person would still have had to go to her individual page, decided that they took such an interest in the woman performing data entry who asked for their organization's address or phone number that they needed to scroll down through dozens, hundreds, eventually I assume thousands of different posts simply to reach the controversial content, and at that point would have had to conclude that that person would cause their service organization to not do business, to not partner with the National Guard. And that is- Could we discuss for a moment the Bivens action? Because in terms of Bivens, it seems to me that Ms. Harnishfeger had a somewhat unique status as a VISTA volunteer. She was receiving a federal stipend, but she was working for a state agency in a volunteer capacity. The principle alleged wrong here was committed by a state official. Don't these facts counsel against allowing a Bivens action against the VISTA officials, particularly if she has a remedy under Section 1983 against the allegedly responsible state official? Judge, we obviously readily acknowledge that Bivens remedy has become the exception rather than the rule. I am aware of no case law, however, standing for the proposition that a Bivens action, that a special circumstance under a Bivens action in a new context will be deemed to exist simply because someone else also violated your constitutional rights, which I think is what the question gets at. The only special circumstance that the government alleges is the existence of this supposedly comprehensive remedial scheme. And we have gone back and forth with the government over our varying interpretations of the regulations at issue. I think even a simple comparison between the regulations here and the regulations under the Civil Service Act makes clear that we are, at the very least, not talking about a comprehensive scheme in the same way that we were in Bush versus Lucas. But those regulations are only conceivably applicable to her actual removal from the National Guard. Ms. Rose, could I raise another problem with you that follows up on Judge Roegner's question? Of course. With its respect, let's assume for the moment that Bivens can reach this kind of situation. In general, the federal employees whom you sued in their individual capacities, as I understand it, were essentially just complying with regulations here. That is, as I understand the way the regulations fit together, if the sponsoring organization, here the National Guard, asks for removal and no agreement can be reached to keep the person in that placement, then they have to remove the VISTA volunteer. I don't think that's right at all, Judge. No? I realize the government says that, as it did in the district court. Under the applicable regulations, once a sponsoring organization requests the removal of a VISTA volunteer, the state program director for the VISTA program, and in this case, Mr. Lopez, may at, and I'm quoting here, may, at his or her discretion, attempt to resolve the situation so that an alternative solution, other than removal of the VISTA, is reached. That's in 410B, correct? That is 410B, yes. What about 410C? Judge, I apologize. I don't have that. When an alternative resolution, as referenced in paragraph B of this section, is not sought or is not reached within a reasonable time period, the state program director shall remove the VISTA from the project. And we might very well have a different situation if the federal employees had done exercising their discretion under subsection B, had explained to the National Guard, you cannot do this under the First Amendment. And the National Guard said, well, we want to do this otherwise. We hear your point. Then C might come into play. But the fact that the government, the federal defendants, viewed themselves as completely incapable of doing anything, I don't think that immunizes them. Was that the way they described themselves? That is the way that they described themselves in the letter concerning Ms. Harnish-Feger's removal. They said that once a sponsoring organization makes this request, we must abide by it. And that's simply not what the regulation says. And I think under these circumstances, the First Amendment commands them to attempt to reach something that does not violate her constitutional rights. And given that the doctrine of qualified immunity applies under Bivens, you seem to be asking for a level of analysis that would be pretty novel in this case. Not in the traditional, I know you've got our cases that you cited on qualified immunity that would apply to the lieutenant colonel and the guard, quite clearly. But I'm not sure I see that with respect to the federal employees. Judge, I think the qualified immunity analysis asked whether it was clear at the time of the actions that the Constitution was being violated. I don't think it asks whether there was a cause of action. And I think- No, I agree with that. And I've said that before, in fact. But with respect to federal employees who are confronted with a novel situation and regulations that they think tell them, if the sponsor is insistent, we've got to take her back. It's hard to see personal liability there. I think, assuming at least for the sake of this line of questioning, that if it was clear that the Constitution was being violated and would be violated by her removal and her termination as a result of her protected speech, I don't think it is a strong, a significant leap to conclude that given regulations that impose, at the very least, some discretion on the federal defendants, that they have to exercise that discretion to make sure the Constitution is not violated, but- You know, I just need to clarify something for myself. Is it your position that the government could have absolutely refused the Indiana Guard's request to terminate her placement with the Guard? Is that your position? The short answer to your question, Your Honor, is no, that is not our position. I think that the regulations and the Constitution impose some duty on them to exercise the discretion that's afforded to them in order to reach a resolution that complies with the Constitution. I think at that point, if the National Guard is insistent, she has to go, we understand that we're violating her constitutional rights, or at least you think we are. I think at that point, the federal defendants may have immunized themselves. But all of this, I mean- Well, if the answer is no, forgive me, but if the answer is no, then what did the government do wrong in terms of requiring that she find an alternative placement? Judge, I think the, for reasons we noted in our briefing, I don't think the alternative was any real alternative. But I think requiring you to seek another position that is outside of your line of interest, outside of why you moved to Indiana, and that may or may not exist, and in fact, as a practical measure, did not exist, I think requiring you to do that because of your protected speech, I think that very, very much is a constitutional wrong. But as I say, these are all Bivens issues, these are all clearly issues related to the federal defendants. We have a clear-cut 1983 claim against Lieutenant Colonel Kuczynski, and we also have an APA claim against the United States. So I think regardless of the various Bivens and potentially causation issues, I would characterize them, clearly the merits of this case have to be reached. What relief are you entitled to under the APA, do you believe? I think there are, as a practical matter, we're entitled to have her, the various decisions against her, set aside. I think that would entail some opportunity to become a VISTA volunteer again, potentially with the National Guard. I think that they're very- But only injunctive relief? Excuse me? Only injunctive relief? Yes, no damages under the APA. So I think the merits quite clearly. If we decided that you were wrong about Bivens, would injunctive relief still be available? I think so, Judge. The Bivens question is a cause of action question, and obviously the APA has its own cause of action. There are two different final agency actions here. One is the removal from the National Guard, and the other is the termination from the VISTA program. And I think both of those, if they flow directly from unconstitutional behavior, I don't think they can stand under the APA. Thank you. Okay, thank you. For the defendants, I think all of them then,  May I please, the court? Laura Myron for the government defendants. I'd be happy to talk about the merits, but I would like to start with the questions on qualified immunity and the APA. And just to remind the court that we're not here to just assess the constitutionality of the conduct at issue here, but only whether the actions so clearly violated a clearly established constitutional prohibition that the individual defendants should be liable in damages. And that clearly established standard applies equally to the claims, whether they're under Bivens or under 1983. So it is not actually required of this court to reach the question whether the individual defendants are subject to a Bivens cause of action or a 1983 cause of action, because they would be equally subject to qualified immunity. And what happened here was not a constitutional violation,  that, first of all, the speech in question was on a matter of public concern. And second, that the pickering factors weighed so heavily against the government interests here that it was... I'm sorry, why does Ms. Harshberger have to show that the book addressed a matter of public concern? She wrote the book as a private citizen prior to her placement with the Indiana Guard. And the book has nothing to do with her work for the Guard. I understand, of course, that we still have to go through the pickering balance analysis, but I'm not sure why it matters in the first instance, whether her speech as a private citizen addressed a matter of public concern. Your Honor, that's the way the Supreme Court has laid out the test. They have explained it as a three-part analysis. The first, whether it's speech by a private citizen. The second, whether it's on a matter of public concern. And the third, whether the pickering factors favor the government interests or the individual speech interests. Well, in terms of the pickering balance, what real danger was there that her connection to the book would become public and in any way interfere with the mission of the Family Programs Office? Because I take it there's no dispute that any of the agencies she was attempting to contact would be able to see her Facebook post about the book. You know, only if she friended them. For instance, couldn't she have simply been directed to not use her Facebook account for work purposes? She could have, Your Honor, but what happened here is that she was holding herself out as an employee of the Indiana National Guard on her Facebook page. She was using that Facebook page to conduct the business of the Guard, presenting herself as the person of contact, as not merely a ministerial employee, but rather the individual who was responsible for connecting organizations that provide services for victims of domestic violence and sexual abuse with members of the Guard and their families. And she was using her Facebook page to conduct the business of the Guard. As I said, she became friends with her supervisor, which I think is an indication that she would be willing to- That was at the supervisor's request, right? Yes, she- Tough to say no. Well, Your Honor, that may be the case, but she accepted the friend request. And I think at the point at which you are using your Facebook account to conduct the business of the office, you are mixing what might have previously been private with the public business of the Indiana National Guard. And again, the question here is whether, not only whether it was reasonable, just whether it was reasonable for them to think that perhaps this mixing of business and her private account could potentially interfere with the business- Perhaps could potentially. Could you address the language, this is relevant to Judge Rovner's question as well, about why it even matters whether the speech addressed a matter of public concern. Could you address the language in the Treasury Employees Union case and the City of San Diego case about private speech that has nothing to do with work? Yes, Your Honor, if I could- And not using speculation to punish public employees for their private speech. If I could take those in turn. Sure. In NTEU, the National Treasury Employees Union case, what the Supreme Court said is, it looked at the kinds of speech in question, the speeches and articles that had been published by government employees, and said that they were made to a larger public audience, that they were on content that was related to matters of public concern, and that they were unrelated to the government employment. And taken as a whole, that they were, in fact, speech on a matter of public concern. And then the court moved on to conduct a Pickering analysis and concluded in that case that because of the broad nature of the prohibition, the government could not articulate particular concerns about individual instances of free speech conduct such that it would outweigh the free speech interest in that case. And there's no suggestion there that the fact that the speech is unrelated to the government employment is a per se rule that would lead the court to conclude that it is speech on a matter of public concern. That's clear, but at the same time, the court was going out of its way to warn against this kind of speculative foundation for disciplinary actions against government employees for speech unrelated to their work. Your Honor, the court has also said that the government does not need to wait for harm to unfold, that it only needs to articulate a basis on which to believe that that harm is- In which language? What cases are you relying on for that point? I believe that that is in Craig, as well as in some of the other Supreme Court cases, including Connick v. Myers and the original Pickering and Garcetti and those kind of cases. Right, where it's so closely related to their work, right? And we've got these warnings from both National Treasury Employees Union and City of San Diego about avoiding speculation and that not being enough. So if I could reach the question about City of San Diego v. Roe as well, which you had earlier asked about. In that case, the court was considering the decision of the Ninth Circuit, which very much mirrored what the plaintiffs are arguing here, that because the speech was unrelated to the employee's employment, that it shouldn't be- As a factual matter, that was not correct in that case, though. Yes, Your Honor. Because the police officer was using his uniform and his status to promote these sexually explicit videos, correct? Yes, Your Honor, although he was not identifiable as a police officer of the San Diego Police Department. So in at least one of those videos, as I recall- I'm sorry, Your Honor? He was wearing, as I recall, he was wearing his uniform in one of those videos. Yes, Your Honor, he was identifiable as a law enforcement officer, but not specifically as a member of the San Diego Police Department. And, but what the court said in that case was that even considering the fact that the speech was related to the employment because he had taken these steps to link his behavior, to link the speech to his employment as a law enforcement officer, even though that was the case, that it was not speech on a matter of public concern and that it was not, in fact, a closed case, that it was not speech on a matter of public concern. And this court has also- To what extent is a public employee required to hide personal behavior outside of the office that is perfectly legal, but which some people may find objectionable, including certain intimate details on an internet dating site, you know, that sort of thing? Your Honor, I think perhaps your question is getting at something I was hoping to address, which is that the plaintiff's theory of the case has the presumption of how the First Amendment interacts with government employment relationship exactly backwards. The Supreme Court has said that you start from the presumption that the government can treat its employees as at-will employees except in cases where their speech as a private citizen on a matter of public concern and the government's interest do not, in fact, outweigh the free speech interest. So when you're looking at an employment relationship, the Supreme Court clearly said in Pickering and Connick and cases like that, that the government may, in fact, engage in behavior that would be unconstitutional if applied to private citizens, but that is perfectly reasonable when it is considering its relationship with its employees. And so what we're talking about here is whether the use of a personal Facebook page for the business of the government, holding yourself out as an employee of the government, and also posting something that, as the Indiana National Guard said in its removal letter, indicates that you would not be someone who emphasizes or encourages help-seeking behavior, that had they known about the previous employment, they would not have hired her for the position, that whether those things are reason to think that the government's interest as her employer, in fact, outweighs her free speech interest in the speech at issue here. So I take your question to be whether or not speech that is unrelated to employment, to what extent that is relevant to the government-employment relationship. And as I said, the court has said that it is only speech on a matter of public concern by an individual as a private citizen where the interests of the government do not outweigh the free speech interests that the Constitution is implicated. Ms. Byron, on the question of Ms. Butler, she ends up getting dismissed, correct? Yes, Your Honor. And she was having the interaction with Ms. Harnisch-Fager. Other than Ms. Harnisch-Fager's affidavit, which is in the record, I think it's record 27. Other than that, was Ms. Butler ever deposed? Was there ever any factual record developed with regard to what Ms. Butler saw when she ended up connecting with Ms. Harnisch-Fager in terms of whether the post was at the top or down? No, Your Honor. This case was a motion to dismiss that was construed in the alternative as a summary judgment motion. The court granted summary judgment, and so there's a somewhat limited record at issue here. So other than Ms. Harnisch-Fager's affidavit, there's no information as to what she actually saw on the Facebook page. But all of the conversation with Ms. Butler's supervisor and raising the issue of this to Lieutenant Colonel Kuczynski all of that took place relatively quickly. So I think there's reason to conclude that it was not so difficult for her to find this on her Facebook page. And as I mentioned, it's not just the post, but also as the Indiana National Guard indicated in their removal request, also the fact of her previous employment that suggests that they would not have hired her for the position had they known of that, that it reflects the judgment of someone who would not emphasize help-seeking behavior and that they had requested for her to be removed. And if I could speak a little bit about the qualified immunity, as I said, it applies equally to both Bivens and 1983 claims. So there's no reason for the court to make. You didn't address in your brief, as I saw, the plaintiff's reliance upon four of our cases denying qualified immunity. I didn't see any response. There are some cases in which the court has concluded that because there are so little on the government side to indicate that any harm might follow that qualified immunity, that it was in fact so clearly established a constitutional violation, but this is a very fact-specific inquiry and the court has said- Then how do we decide it on a motion to dismiss an effect? Then how do we decide it on such a limited record? There is, I think, sufficient evidence in the record that would indicate that at the time that the decision was made that the government employees had considered the consequences of the speech at issue and that would be contrary to cases like Gustafson in which all of the evidence or suggestion that perhaps there would have been disruption came later and in fact, there was contemporaneous testimony that, or testimony that at the time of the speech, there was no concern about the implications that it would have for the office. So again, there are some cases, certainly they go the other way. I'd like to follow up on Judge Hamilton's question to you because after our decision in Eberhardt, what would have been unclear to Ms. Kopchinsky about the unlawfulness of terminating an employee for a book she wrote as a private citizen, a very low-level employee indeed, under a pseudonym? You see, your focus seems to be on whether the book addressed a matter of public concern and for me, that is entirely irrelevant. Well, Your Honor, the district court concluded that the book did not address a matter of public concern and in order to prevail on their damages claims, plaintiffs would both need to overcome, plaintiff would both need to overcome the conclusion that it was not on a matter of public concern and that the balancing tipped in the plaintiff as opposed to the government's favor and in addition, that at the time that the decision was made that it was so clearly established that this kind of thing could not possibly be permissible and that's just not the situation that we have here. In Craig, this court said that a plaintiff's explanation or description of his own sexual exploits would not be a matter of public concern and so I think there's certainly reason to think that the book that we have here is very close to, if not exactly, that kind of description of an individual's sexual exploits viewed in isolation and so it would, in addition to that indication to that it perhaps was not a matter of public concern to the individual employees at issue here, they would also have had to, the court would also need to conclude that the fact that she, even though she had held herself out as an employee on the same Facebook page where she was promoting her authorship of this book and she had used that Facebook page for purposes of contacting organizations on behalf of the National Guard, that it was in fact so clearly established that this would violate her First Amendment rights that no other course of conduct could have been taken other than to keep her on as an employee. I want to talk a little bit about Lieutenant Colonel Kopchinsky's role. You use page 40 of your brief, trinal capacity. As I understand it, her role at that point was in a monitoring role or a supervisory role with regard to the federal aspect of the VISTA program. Is she also doing other things or do we know from the record what her role is? We don't know from the record, Your Honor. As I mentioned, I don't think you need to reach this question because the qualified immunity analysis would be the same. But suppose we do. But even if you do, there is, she does have an SF-50 which is a federal employment employee document that is in the record. There hasn't been much in terms of what exactly- The colonel does? Yes, Your Honor. And as we said in our brief, she was in fact supervising Ms. Harnisch-Bager as a federal volunteer. She received federal funds for that. And as you mentioned, the National Guard is a particularly unique organization in which it's required to consider whether they're acting in the state or civilian or federal capacity. And there's reason to think here that she was acting in her federal capacity as a supervisor of a VISTA volunteer. How does that apply to, let's say, a local housing authority or a local, or let's say a state child services agency? Well, the National Guard is particularly unique because they- I'm asking you about the others. I think the analysis would be different in the case of a different organization because they wouldn't necessarily have the same federal hat that they are able to wear. And as I mentioned, she does have an SF-50 as a federal civilian employee. And presumably, private entities like private schools or the Boys and Girls Club don't even act under color of state or federal law when they supervise VISTA employees, do they? That's correct. And when you say Lieutenant Colonel Kopchinsky is receiving federal funds through the federal monitoring, you're saying she is receiving the federal funds. You're not talking about the stipend that Ms. Harnischvig receives. The sponsoring organization does receive, my understanding, does receive some federal assistance as part of the program. And there's also a provision that would allow, in the case at 42 USC 5057, that would allow CNCS to withhold that federal funds if certain conditions related to discrimination on the basis of race, sex, and some other things are found. And so there is very much a federal supervision aspect of the relationship between CNCS and the organizations there. And I think in this context, what you're looking to see whether an individual who already wears a state, a civilian, and a federal hat under which of those that she's acting, that the facts here demonstrate she was acting as a federal employee. Section 5057, if I recall correctly, also provides an essence that sponsoring organizations will be treated as receiving federal funds for purposes of the Civil Rights Act of 1964, the ADA, the, what am I forgetting, the Rehabilitation Act, and so on, which would also, Title IX, all of which allow individual rights of action against people using federal funds, correct? Against the organization, yes. Yes, Your Honor. Against the organization, right, okay. If the- But none of that, sorry, but none of that reaches, in essence, free speech discrimination, correct? No, Your Honor, it- That's the gap here. Yes, Your Honor. Okay, thank you. If the, Ms. Hartsinger had not been let go, would there have been some type of a punishment that would have happened to the Indiana National Guard? There is, in cases where a removal request has been made, if there's reason to think that that was inappropriate, the CNCS will take some actions against the sponsoring organization, most likely terminate the relationship between the sponsoring organization and CNCS to have future VISTA volunteers, but an individual would not receive any process different than what Ms. Harnisch-Figure received here. They would be offered, they would be removed per the regulation that was previously mentioned. They would be offered an opportunity to seek reassignment and perhaps avail themselves of the grievance procedure, which Ms. Harnisch-Figure did not do, and then if suitable assignment were not available, they would be terminated for lack of suitable assignment and offered an opportunity to reapply, which again, Ms. Harnisch-Figure has also been offered and has not availed herself of. Ms. Myron, could you address the question I was talking about with Mr. Rose about how these different regulatory provisions fit together under the VISTA program, in particular where the sponsor asks for removal? Yes, Your Honor. CNCS does not have the authority under the statute to require an organization to keep a volunteer that after a removal request has been made, and as a practical matter, it's not in their interest to do so, and they don't particularly, it's not particularly good for either the volunteer or the organization to be required to keep someone passed when a removal request has been made. As is outlined in the VISTA Administrative Handbook, what happens is exactly what happened here. An individual is removed, they're offered an opportunity to seek reassignment if circumstances merit, they are offered an opportunity to avail themselves of the grievance procedure, which Ms. Harnisch-Figure did not take advantage of if they believe some... It provides exactly the kinds of remedies that she had here, essentially the opportunity to seek reassignment, the question of whether your termination will be for cause or for a non-cause reason, here she was terminated for a non-cause reason, and the ability to reapply to the program. So it doesn't provide a damages remedy. Can I just, I do need to ask you one more question. We're a little over time, and Mr. Rose will have a couple extra minutes, but I have to say, the government's argument about how dangerous it would be and disruptive to have allowed Ms. Harnisch-Figure to remain as a clerical data entry person with the Indiana National Guard is a little difficult to reconcile with the suggested alternative placements from the federal government. Well, I would say a couple of things. First, I don't think it's right to say just that she was a clerical person, and she was reaching out to these organizations and was presenting herself as the face of the Indiana National Guard in connecting them with- To find out her address and phone number. Sorry, Your Honor? Just to find out their address, and if she had the correct address and phone number. Even still, Your Honor, I think it's not fair to say that she was in a back room just entering information into a database. She was, in fact, reaching out to organizations publicly on behalf of the organization, and the substance of that request does not actually change the fact that she was presenting herself as an employee of the Guard in that context. And could you go back to my question, please? Yes, Your Honor. So, I'm sorry, could you remind me what the- The reconciliation. Yes, yes, yes. The other suggested placements. Yes, Your Honor. So, I would say a couple of things. First of all, there's no evidence in the record that would suggest the kind of job she would be doing at these organizations, or even if she would have been selected. No, because this was dismissed at 12B6, okay? It was not, Your Honor, but it was a grant of summary judgment. It was a conversion on a very, very limited record. Yes, Your Honor, but I don't think it's fair to assume that that kind of, if there had been some factual development, that that would have come out the other way. And frankly, in the letter that Lieutenant Colonel Kopchinsky sent to CNCS asking for her removal, they said, had they known about her prior employment, not the speech or the posting question, but her prior employment as a phone text operator, they would not have hired her. So, I don't think we even know that she would have been selected for those positions, but all she was entitled to was the opportunity to seek reassignment. She had that. She chose not to avail herself of it. And I don't, there is no reason for this court to conclude, not only was it inappropriate for the guard to think that her previous conduct as a phone text operator and her incredibly graphic account of it, promoting that kind of thing would not be reconcilable with her role as someone who works for an organization that helps connect victims of domestic violence and sexual abuse with services that they need. Or with public schools or with boys and girls clubs. Again, we don't know whether she would have been selected for those, and we don't know what the service at those organizations would be. Is there anything else you want to conclude with? That's it. Thank you, Your Honor. Thank you very much, Ms. Myron. Mr. Rose, take two extra minutes if you would. Briefly, Your Honor. Because you don't have to use it. Briefly, Your Honor, thank you. There is no doubt that National Guard units have a dual federal state relationship. This court was explicit in Knutson in doing so. The reason we know that Lieutenant Colonel Kuczynski was a state actor here is not only Knutson also. I think that's quite clear about when you become a federal actor. But it's also, there has never been any hint that Ms. Harnisch-Feger was actually employed by the United States Army, or that Lieutenant Colonel Kuczynski was acting as her role as an employee of the United States Army, which was her federal role. On top of that, she could not have been. Federal regulations define explicitly who may be a sponsoring organization under the VISTA program. In addition to non-profit organizations, there are state, local, and tribal bodies of government, or agencies, they are not the federal government. They could not have been federal action in this case. And in assessing Pickering balancing, I think we have to look at the sheer number of facts in the record that weigh in our favor. What we have here is speech that occurred before public employment, that was entirely unrelated to public employment, that was published under a pseudonym by a ministerial employee, and not just any ministerial employee, a temporary ministerial employee. There was no showing of actual disruption in three months, which makes this case strikingly similar to Gustafson again. And where the government continued to offer her a position even after learning of this speech. On top of all of that, the speech does address a public issue, and it does so from a unique perspective held by the speaker. If Ms. Harnisch-Feger had, instead of writing this, published an op-ed saying that, I learned certain things when I was a phone sex operator, and I think everyone should look on the persons their children interact with with a healthy degree of skepticism, I don't think there would be any doubt, even from the government, that that was an issue of public concern. And that's exactly what she did in this case, even if she did it more caustically. Given those sheer numbers- Forgive me, but do you agree with Ms. Myron's point that had the, had Vista known of her prior employment that she could not have been hired? Judge, I think serving as a phone sex operator itself conceivably has a First Amendment dimension. I think it would have been a different case at that point. I see my time is up. Thank you very much. All right, thank you very much, Mr. Rose. Thanks to both counsel. The case is taken under advisement. We'll move on to-